

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. AP-76,132

### Ex Parte JOSE GARCIA BRISENO, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### IN CAUSE NO. 1929-CRA-28-D1
### FROM THE 49TH JUDICIAL DISTRICT COURT
### WEBB  COUNTY

**HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., AND PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., dissented.**

We filed and set  Jose Garcia Briseno's post-conviction application for writ of habeas corpus in order to determine: (1) whether that application was procedurally barred and, if not, (2) whether the jury instructions at Briseno's capital murder trial violated the Eighth Amendment.  We answer the first question in the negative and the second question in the affirmative, and we remand the case for a new punishment hearing.

*Background*

On June 26, 1989, the United States Supreme Court handed down its opinion in *Penry v.*

*Lynaugh*, 492 U.S. 302 (1989). In that case, the Supreme Court addressed the validity, under the Eighth Amendment, of the Texas statutory special issues submitted to the jury at the punishment stage of Johnny Paul Penry's capital murder trial. The Court held that neither the "deliberateness" nor "future-dangerousness" special issues was broad enough to provide an adequate vehicle for Penry's jury to give full mitigating effect to his evidence of mental retardation and childhood abuse.

On January 30, 1991, a Dimmit County grand jury returned an indictment charging Briseno with the capital murder of Dimmit County Sheriff Ben Murray.[1] On April 11, 1991, Briseno filed a written motion to set aside the indictment. In that motion, Briseno, citing *Penry v. Lynaugh*, 492 U.S. 302, argued that the deliberateness and future-dangerousness special issues would "not permit the jury to consider and give effect to all the mitigating circumstances which exist[ed] concerning [him]." On that same date, Briseno, in a separate written motion, asked the trial court to instruct the jurors that they could nullify their affirmative answers, if any, to the special issues if they had "a reasonable doubt, based on mitigating evidence, as to whether death [was] the appropriate punishment." On April 19, 1991, the trial court denied Briseno's motions.

On June 18, 1992, the State brought Briseno to trial. During the guilt stage of that trial, the jury received evidence, in the form of Briseno's prison records from a prior incarceration, stating that he had an IQ of 67, i.e., that he had a significantly sub-average level of intelligence.[2] Notably, there was no evidence presented that Briseno was actually mentally retarded. At the conclusion of the guilt stage of trial, the jury found Briseno guilty as charged in the indictment.

---

[1] On Briseno's motion, venue was changed to Webb County.

[2] Certain other evidence presented at Briseno's trial was also potentially mitigating, but given our disposition of Briseno's claim today, discussion of the other evidence is unnecessary.

At the punishment stage of trial, the trial court, in an apparent attempt to meet the requirements of the Eighth Amendment as interpreted in *Penry*, specially instructed the jurors as follows:

> "You are instructed that any evidence which, in your opinion, mitigates against the imposition of the Death Penalty, including any aspect of the defendant's reputation, character, or record, or any of the circumstances of the commission of the offense which have been admitted in evidence before you, may be sufficient to cause you to have a reasonable doubt as to whether or not the true answer to any of the special issues is 'yes'; and in the event such evidence does so cause you to have such a reasonable doubt, you should answer the issue 'no.'"

At the conclusion of the punishment stage, the jury answered both special issues in the affirmative, and the trial court sentenced Briseno to death.

On direct appeal, Briseno did not complain of the trial court's failure to grant his pretrial *Penry* motions.[3] He did bring other complaints, however, all of which we rejected. *Briseno v. State*, No. 71,489 (Tex.Crim.App.–June 29, 1994) (not designated for publication).

On July 31, 1995, Briseno filed his initial post-conviction application for writ of habeas corpus. We denied relief. *Ex parte Briseno*, No. WR-29,819-02 (Tex.Crim.App.–Nov. 27, 1996)

---

[3] Briseno's decision not to complain of the trial court's failure to grant his pretrial *Penry* motions may have been based on our decision in *Lackey v. State*, 819 S.W.3d 111 (Tex.Crim.App. 1991) (op. on reh'g), which we handed down a few months after Briseno was indicted. In *Lackey*, we held that the defendant's mitigating evidence of "limited intellectual . . . capability" "was not comparable to the . . . evidence of organic brain damage and mental retardation found in *Penry*" and that "special issue two [concerning the defendant's future dangerousness] provided the jury with an appropriate vehicle for evaluating and acting upon" such evidence. *Id*. at 134. Thus, our decision in *Lackey* signaled our belief that evidence of low intelligence, as opposed to evidence of actual mental retardation, would not entitle a defendant to a *Penry* instruction. We maintained that erroneous belief until the decision in *Tennard v. Dretke*, 542 U.S. 274 (2004), in which the Supreme Court held that "[t]he relationship between the special issues [concerning the defendant's deliberateness and future dangerousness] and Tennard's low IQ evidence has the same essential features as the relationship between the special issues and Penry's mental retardation evidence." *Id*. at 288.

(not designated for publication).

On July 10, 2002, Briseno filed his first subsequent post-conviction application for writ of habeas corpus. We again denied relief. *Ex parte Briseno*, 135 S.W.3d 1 (Tex.Crim.App. 2004).

*Briseno's Penry Claim*

On April 1, 2009, Briseno filed his second subsequent post-conviction application for writ of habeas corpus. In that application, he complained, for the first time, of the trial court's failure to grant his pretrial *Penry* motions, and he asked for a new punishment hearing. More specifically, Briseno argued that "the two special issues [concerning his deliberateness and future dangerousness] precluded the jury from giving full effect to his mitigating evidence." His argument continued:

> "This was a claim preserved at trial but not raised on direct appeal, because by the time the opening brief was filed on direct appeal, the post-*Penry* decisions of this Court, the United States Court of Appeals for the Fifth Circuit, and the Supreme Court had so limited *Penry* claims that Mr. Briseno no longer had a *Penry* claim. With the Supreme Court's decision in *Tennard v. Dretke*, 542 U.S. 274 (2004), Mr. Briseno's *Penry* claim was resurrected. This series of legal developments, between trial and 2004, warrants the consideration of Mr. Briseno's revived *Penry* claim on the merits."

On April 8, 2009, we ordered Briseno's second subsequent post-conviction application for writ of habeas corpus filed and set in order to determine: (1) whether the application was procedurally barred and, if not, (2) whether the jury instructions at Briseno's capital murder trial violated the Eighth Amendment. In his brief to this Court, Briseno reiterates the arguments that he made in his application. The State responds that Briseno's claim is procedurally barred because he could have raised it on direct appeal and because he could have raised it in his earlier applications for habeas relief.

*Analysis*

We turn first to the question of whether Briseno's habeas claim is procedurally barred because he could have raised it on direct appeal. "Ordinarily, the writ of habeas corpus may not be used to litigate matters that could have been raised . . . on direct appeal." *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex.Crim.App. 2001). However, an applicant's failure to raise a claim on direct appeal may be excused if the basis of the claim was not reasonably available at the time of the direct appeal. *Ibid*. Briseno's habeas claim today is based on *Tennard v. Dretke*, 542 U.S. 274 (2004) (discussed below). We have previously held that *Tennard* "announce[d] new law." *Ex parte Hood*, No. AP-75,370, ___S.W.3d___, ___ (Tex.Crim.App.– Feb. 24, 2010), slip op. at 20. Thus, the basis of Briseno's habeas claim today was not reasonably available at the time of his direct appeal.

We turn next to the question of whether Briseno's habeas claim is procedurally barred because he could have raised it in an earlier application for habeas relief. Article 11.071, § 5, of the Texas Code of Criminal Procedure provides that a subsequent post-conviction habeas application is barred unless the claim asserted therein was factually or legally unavailable at the time the previous habeas application was filed. As we noted earlier, Briseno's current habeas claim is based on *Tennard v. Dretke*, 542 U.S. 274 (2004), and, as we also noted earlier, we held in *Hood* that *Tennard* announced new law. We have also held that death-row inmates who relied upon *Tennard* in their subsequent habeas applications were entitled to have their *Penry* claims addressed. *See Ex parte Hood*, ___S.W.3d at___, slip op. at 20. Therefore, we must treat Briseno's *Penry* claim in the same manner. "Similarly situated litigants bringing similar claims should be treated similarly." *Ibid*.

We turn next to whether *Penry* evidence was presented at Briseno's trial. Yes, it was. As we noted earlier, at Briseno's trial there was evidence presented that he had significantly sub-average

intelligence. In *Tennard*, the Supreme Court held that such evidence is "obviously" mitigating because it might serve as a basis for a sentence less than death. 542 U.S. at 288. Furthermore, the Supreme Court held, such evidence had mitigating potential beyond the scope of the statutory special issues. "The relationship between the special issues and Tennard's low IQ evidence has the same essential features as the relationship between the special issues and Penry's mental retardation evidence." *Ibid*.

We turn finally to the question of whether the trial court's special jury instruction, quoted above, met the requirements of the Eighth Amendment as interpreted in *Penry*. No, it did not. As we explained in *Rios v. State*, 846 S.W.2d 310, 317 (Tex.Crim.App. 1992), when addressing an identical instruction, such an instruction did "not adequately inform the jury that it may assess a punishment less than death on account of [the mitigating evidence] irrespective of what the evidence shows as to [the defendant's] deliberateness and future dangerousness." Thus, the jury at Briseno's trial had no vehicle with which to give full mitigating effect to his evidence of significantly sub-average intelligence.

We grant the relief requested, and we remand the case for a new punishment hearing.


DELIVERED JUNE 9, 2010

DO NOT PUBLISH